**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 24-CR-113-DCR-MAS**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **PLEA AGREEMENT**

**BRENT ROBERT COMSTOCK** **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 6 of the Indictment, charging a violation of 18 U.S.C. § 2251(a), employing, using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing, or transmitting live, a visual depiction of that conduct. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss the remaining counts in the Indictment.

2. The essential elements of 18 U.S.C. § 2251(a), charged in Count 6 of the Indictment, are:

(a) The Defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing, or transmitting live, a visual depiction of that conduct; and

(b) The Defendant knew or had reason to know that such visual depiction would be transported or transmitted using a means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

3. As to Count 6, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) At all relevant times, Victim 1 was a minor under the age of twelve who had a quasi-familial relationship with Brent Robert Comstock ("Comstock" or "Defendant," born in 1981). Witness 1 is Victim 1's mother. Victim 1 frequently visited Comstock, without the presence of Witness 1, at Comstock's home, which is where the conduct described in the Indictment occurred.

(b) Witness 1 had access to a tablet that shared content with Comstock's Google account, xxextreme101xx@gmail.com, including pictures. On or about September 16, 2024, Witness 1 observed a picture of Victim 1 on the aforementioned tablet in which Victim 1 posed on her hands and knees with her buttocks in the air while wearing short shorts that nearly exposed her genitals. After seeing this image, Witness 1 asked Victim 1 about the picture. Victim 1 disclosed to her mother that Comstock took her clothes off, touched her in areas that would normally be covered by a swimsuit, and made her wear a "machine." Victim 1 also told her mother about a special pair of panties that Comstock would have her wear only at his residence.

(c) Witness 1 reported Victim 1's disclosure of sexual abuse to Georgetown Police Department ("GPD"). On September 20, 2024, GPD obtained and executed a search warrant at Comstock's residence. During the execution of the search warrant, GPD personnel seized a black vibrating sexual device and a pair of pink heart panties in Comstock's bedroom in the bedside table.

(d) During an interview contemporaneous with the execution of the search warrant, Comstock claimed that he did not have a phone because it had just been broken the day before, prompting him to throw it away in a dumpster. However, GPD personnel located a combination safe located in the closet of the master bedroom containing a Bosche tool bag containing children's panties and a black Samsung Galaxy smart phone, powered on. GPD personnel called Comstock's number and the aforementioned Samsung Galaxy phone rang.

(e) A forensic examination of the Samsung Galaxy smart phone revealed at least 603 sexually explicit visual depictions of Victim 1. The pictures and videos include but are not limited to: lewd or lascivious depictions of Victim 1's genitals and/or anus; images of Victim 1 wearing thong underwear that were located at the residence; depictions of Victim 1's genitals while urinating; depictions of a male

hand digitally manipulating and/or penetrating Victim 1's genitals and/or anus; depictions of a male hand rubbing a sex toy on Victim 1's genitals and/or anus; and depictions of an object penetrating Victim 1's anus. At least one of the videos showed an adult male whose appearance is consistent with Comstock's appearance.

(f) After Comstock's arrest and placement in Scott County Detention Center, Comstock made several incriminating statements on phone calls with his family members. Comstock claimed that Victim 1 wanted him to touch her in a sexual manner. Comstock said that he knew his conduct with Victim 1 was illegal but claimed that he engaged in that conduct for Victim 1's benefit, claiming that he got no pleasure from it. Comstock also claimed that revenge against Witness 1 also partially motivated his conduct, because Witness 1 did not appreciate him. Though he admitted touching and rubbing Victim 1 in a sexual manner, and using "the machine" on her, Comstock said that his conduct was not "abuse" because he did not harm Victim 1. Comstock also said that he would probably marry Victim 1 when she turns eighteen, claiming that Victim 1 viewed him as her boyfriend. When discussing the child pornography charges, Comstock admitted that there was "stuff" on his phone. Comstock also admitted that videos of Victim 1 "interacting" with him while "naked" and videos of Victim 1 playing with herself existed on the phone.

(g) The aforementioned Samsung Galaxy was manufactured outside of the Commonwealth of Kentucky. The Defendant admits that he knew or had reason to know that the visual depictions were produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

(h) The Defendant admits that Victim 1 was in his custody or supervisory control when he produced sexually explicit visual depictions of her.

4. The statutory punishment for Count 6 is imprisonment for not less than 15 years and not more than 30 years, a fine of not more than $250,000, and a term of supervised release of not less than 5 years and up to life. A mandatory special assessment of $100.00 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea. An additional mandatory special assessment of $5,000 applies, pursuant to 18 U.S.C. § 3014, for non-indigent Defendants convicted of certain offenses, including those in chapter 110 (which includes the offense to which the Defendant is

pleading guilty). The Defendant will pay this assessment to the U.S. District Court Clerk after the sentencing hearing, in accordance with the Judgment, if the Court determines the Defendant is non-indigent and orders such assessment to be paid. Moreover, the Defendant acknowledges that, pursuant to 18 U.S.C. §2259A(a)(3), an assessment per count of no more than $50,000 may apply to any person convicted of a child pornography production offense as defined by 18 U.S.C. § 2259(c)(1). Also, mandatory restitution under 18 U.S.C. § 2259 may be applied.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) The United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is 32.

(c) Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), increase the offense level by 4 levels because the offense involved a minor that had not attained the age of 12.

(d) Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), increase the offense level by 2 levels because the offense involved a sexual act or sexual contact.

(e) Pursuant to U.S.S.G. § 2G2.1(b)(5), increase the offense level by 2 levels because the minor was in the custody, care, or supervisory control of the Defendant.

(f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(g) Pursuant to U.S.S.G. § 5E1.1, restitution will be determined at

sentencing or at a separate restitution hearing. The Defendant agrees to pay restitution equal to the loss caused to any victim of the offense of conviction.

6. No agreement exists as to the application of U.S.S.G. § 2G2.1(b)(4), relating to whether the material depicted sadistic or masochistic conduct, or U.S.S.G. § 4B1.5(b), relating to whether the Defendant's offense of conviction is a covered sex crime and the Defendant engaged in a pattern of activity involving prohibited sexual conduct.

7. Further, no agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4, Part A.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal any aspect of his sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise

contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant agrees to pay restitution in the amount and to the victim(s) as ordered at sentencing, pursuant to 18 U.S.C. § 3663(a)(3). The Defendant specifically agrees to pay restitution equal to the loss caused to the victim(s) of the offense of conviction

and any victim of the Defendant's relevant conduct—including victims depicted in child sexual abuse material that the Defendant produced, received, or possessed. The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the

Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands that, by pleading guilty, he will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). The Defendant also understands that, independent of supervised release, he will be subject to federal and state sex offender registration requirements and that those requirements may apply throughout his life. The Defendant will be required to register with the sex offender registration agency in Kentucky and shall also register with the sex offender registration agency in any state or other jurisdiction where he resides, is employed, or is a student. The Defendant understands that he shall keep his registration current and shall notify the sex offender registration agency or

agencies of any changes to his name, place of residence, employment, student status, information relating to intended foreign travel, or other relevant information. *See* 34 U.S.C. 20914(a) & (c). The Defendant shall comply with requirements to periodically verify in person his sex offender registration information. The Defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. The Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon his release from confinement following conviction.

14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The

Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
FIRST ASSISTANT
UNITED STATES ATTORNEY

Date: 3/9/26 By: [signature]

Mary L. Melton
Assistant United States Attorney

Date: 3-3-26

Brent Robert Comstock
Defendant

Date: 3-3-26

Thomas C. Lyons
Attorney for Defendant