**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL NO. 24-CR-00113-DCR-MAS** ***ELECTRONICALLY FILED***

**UNITED STATES OF AMERICA** **PLAINTIFF**

**VS.** **SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE**

**BRENT ROBERT COMSTOCK** **DEFENDANT**

** ** ** ** ** ** ** ** **

The Defendant, Brent Robert Comstock, by counsel, respectfully submits this Memorandum to assist the Court in fashioning a sentence under 18 U.S.C. § 3553(a) that is "sufficient but not greater than necessary" to comply with the purposes of that statute. Additionally, Defendant is seeking a variance from the applicable guideline imprisonment range for the reasons discussed below.

## I. INTRODUCTION

The Defendant stands before this Court convicted of a violation of 18 U.S.C. § 2251(a). Specifically, Count 6 charged the Defendant with employing, using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. [Record No. 36, Plea Agreement, ¶ 1]. The statutory punishment for this offense is not less than 15 years nor more than 30 years imprisonment. Based primarily – but not exclusively – on mental health issues which Defendant suffered from at the time of the crime, Comstock is requesting a prison sentence of 275 months – within the statutory punishment range.

## II. SENTENCING STANDARDS

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").

In imposing an appropriate sentence, the guidelines are the "starting point and the initial benchmark. The guidelines are not the only consideration, however." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to determine whether they support the sentence requested by a party. In doing so, [the Court] may not presume that the guideline range is reasonable," and must "make an individualized assessment based on the facts presented." Id. at 49-50 (internal citations omitted). As noted by the Sixth Circuit in *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008), "the sentencing processes involves an exercise in judgment, not a mathematical proof." *Grossman* approved the now-familiar process a district court must employ in sentencing: "properly calculate the guideline's range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence." Id. at 595 (citing *Gall*, 128 S.Ct. at 597).

## III. GUIDELINE CALCULATION

Per the Presentence Investigation Report ("PIR"), the United States Probation Office ("USPO") started with a base offense level of 32 pursuant to U.S.S.G. § 2G2.1(a). The USPO then applied multiple specific offense characteristics culminating in an adjusted offense level of 44.[1] (PIR ¶ 26). A 5-level enhancement for "repeat and dangerous sex offenders" was assessed against the Defendant pursuant to U.S.S.G. § 4B1.5(b)(1). The resulting total offense level was 49. (PIR ¶ 27). Comstock received 3-levels off for acceptance of responsibility, but the total offense level was reduced to 43 pursuant to Chapter 5, Part A (comment n.2) because the offense level was greater than 43. (PIR ¶ 29).

With a criminal history category of II (2 points), Defendant's sentencing guideline imprisonment range is life. However, because the statutory authorized maximum sentence of 30 years is less than the minimum of the applicable guideline range, the guideline term of imprisonment is 360 months per U.S.S.G. § 5G1.1(a). (PIR ¶ 78).

Defendant submits that a sentence of 360 months is unduly punitive and unnecessary to vindicate the purposes of 18 U.S.C. § 3553(a).

## IV. DISCUSSION OF § 3553(a) FACTORS AND REQUEST FOR A VARIANCE FROM THE GUIDELINE RANGE

Under 18 U.S.C. § 3553(a), a sentencing court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in the second paragraph of the statute. Post-*Booker*, this Court has "greater latitude" to sentence outside the guideline range, and may conclude that a lower sentence would still comply with and serve the

[1] The Plea Agreement, in ¶ 6, indicated that the parties disagree about the SOC involving "sadistic or masochistic conduct" under § 2G2.1(b)(4). However, thorough research regarding the guideline text (and commentary), and applicable controlling case law indicate an objection to this SOC cannot be maintained.

mandates of section 3553(a). See *United States v. Collington,* 461 F.3d 805 (6th Cir. 2006). Indeed, "*all* of the sentencing guidelines are advisory." *United States v. Michael*, 576 F.3d 323, 327 (6th Cir. 2009) (quoting *United States v. Liddell*, 543 F.3d 877, 884 (7th Cir. 2008)).

For the reasons discussed below, Comstock respectfully submits that a sentence of 275 months, followed by a 10 year term of supervised release, would meet all the sentencing objectives of 18 U.S.C. § 3553(a).

**A. <u>The Nature and Circumstances of the Offense</u>**

The offense conduct is described by the USPO in ¶¶ 7-13 of the PIR. To summarize briefly: Comstock engaged in unlawful sexual contact with his ex-girlfriend's daughter (Victim 1) on several occasions during the fall of 2024. Witness 1 (Victim 1's mother) discovered this activity when viewing a tablet that shared content with Comstock's Google account. The evidence reveals that Defendant took a significant number of sexually explicit pictures of Victim 1 and had sexual contact with her on several occasions. Specifically, as to Count 6, forensic examination of the Defendant's phone revealed six (6) images classified as Child Sexual Abuse Material (CSAM) from August 17, 2024. The images depict a prepubescent female posed in a sexually suggestive manner. In several of the images, Victim 1 was nude from the waist down, exposing her private area. Additionally, there were images that depict a black object inserted into the anus of the child. (PIR ¶ 11).

Comstock admitted that he had supervisory control over Victim 1 and has accepted responsibility for the crime involved here. It is important to note, however, that Comstock: (1) did not distribute any CSAM material; (2) did not participate in any child porn community activity; and (3) engaged with a single victim, with no evidence that the Defendant was involved with any other minors.

**B. <u>History and Characteristics of the Defendant</u>**

Brent Comstock is a 44-year-old white male, raised in Wheatland, Wyoming for the majority of his childhood. His father was employed as a truck driver and the family had modest financial means. (PIR ¶ 55). Comstock was physically and verbally abused by his father from ages 10 to 15. The physical abuse ceased when he was diagnosed with ulcerative colitis and spent several months treating for that illness. (PIR ¶ 56). Defendant's parents divorced when he was 16 or 17, but Comstock continued to reside with his father in Wyoming.

Comstock was previously married, but the union did not produce any children, and ultimately ended in divorce when he was 31. Subsequently, Comstock was involved in romantic relationship with Witness 1 from approximately 8 ½ years. The couple have two children together, ages 10 and 8. Witness 1 had children from a previous relationship and one of those children was Victim 1. Comstock has *voluntarily terminated* his parental rights with his minor children due to the instant offense and subsequent incarceration. (PIR ¶ 59).

The Defendant has had significant substance abuse problems over the course of his lifetime. He started using alcohol and marijuana at age 10, graduating to cocaine, methamphetamine and opiates. At the time of the offense, he was using opiates and taking massive doses of Adderall. (PIR ¶ 71).

Comstock only completed the nineth grade before withdrawing from school due to the ulcerative colitis that he suffered from. He had no additional education and never obtained his GED. (PIR ¶ 74). In terms of employment, Comstock worked in residential construction his entire life. Defendant was a self-employed subcontractor specializing in flooring, tiling and bathroom construction. He earned a decent living, grossing somewhere between $4,000 and $8,000 per month, which was used to support Witness 1 and the children. (PIR ¶ 75).

Comstock has some criminal history, mostly related to the abuse of alcohol and alcohol-related crimes. He has a 2-points conviction for wanton endangerment, which resulted from an altercation between Witness 1's new boyfriend and the Defendant. (PIR ¶ 40).

Defendant presently suffers from a delusional disorder – believing that he was involved in a *romantic relationship* with Victim 1. The PIR documents statements that the Defendant made shortly after the time of his arrest indicating that he engaged in the conduct for "Victim 1's benefit," that he wanted to "marry Victim 1 when she turned 18," and claiming further that Victim 1 "viewed him as her boyfriend". (PIR ¶ 12). This issue is discussed in more detail as a basis for the variance requested herein.

**C. <u>A Variance from the Recommended Term of Imprisonment is Appropriate</u>**

Defendant Comstock is requesting a sentence of 275 months imprisonment which is within the statutory punishment range. This sentence is warranted for the following reasons.

**1. Defendant's Diminished Capacity.**

As the Court knows, the Defendant was evaluated for competency as well as sanity at the time of the crimes involved. The BOP facility at Butner found him to be both competent and sane at the time of the alleged crimes. (See Sealed Forensic Psychiatric Reports). However, Defendant has also been evaluated by Eric Drogin, Ph.D. ("Drogin"), a qualified psychologist in Kentucky. Drogin has opined that Comstock meets the criteria for **Delusional Disorder** "given in particular that his own symptom burden reflects suitably prolonged duration, is distinct from Schizophrenia (comporting with effective treatment focus), and is manifested in terms of an 'erotomanic type,' identified in the latter instance by the delusion that another person is in love

with the patient". (A copy of Drogin's Report is attached hereto as Exhibit 1).[2] Drogin bases his conclusions on multiple interviews of the Defendant, review of the psychiatric reports from Butner, as well as medical/jail records from the Grayson County Detention Center.[3]

It is important to note that although Butner found evidence of "malingering" when evaluating Defendant Comstock using "screening tools," Drogin indicates that no malingering occurred when he administered the comprehensive *Structured Interview of Reported Symptoms,* (Second Edition). The result was a finding of "Genuine Responding." (Drogin Report, P. 2).

The records from Grayson indicate that the Defendant is on multiple psychiatric medications including Remeron (an antidepressant) and Buspar (an anxiolytic). Those records – reflecting a period from February 2025 to April 2026 – confirmed neurological abnormality, diminished capacity, disorientation, anxiety, depression, diagnostically relevant adjustment difficulties, and ongoing complaints of experiencing "demons." (Drogin Report, P. 1).

Drogin reports that Comstock's delusional disorder is treatable, and Defendant would benefit from a combination of antipsychotic medication and cognitive-behavioral therapy. Given that Comstock is not subject to intellectual development disability, he presents "an appropriate candidate for this form of psychotherapeutic intervention." (Drogin Report, P. 2).

Defendant's delusion that he was in a "romantic relationship" with a prepubescent minor indicates a man with serious psychological deficits. His description of the relationship between himself and Victim 1 has been consistent over time: at the time of the offense, during jail phone calls, subsequent evaluations at Butner and observations from the Grayson jail staff. While not

---

[2] Counsel for Defendant anticipates remote testimony from Drogin at the sentencing hearing, which will describe in more detail his evaluation, interviews of the Defendant, records review, and the conclusions reached in this case.

[3] The records from Grayson County Detention Center will be filed with the Court under seal separately.

excusing in any way the depraved behavior involved, Defendant's psychological problems certainly provide context for his crime and warrant a sentence below the maximum statutory punishment of 360 months.

**2. Defendant's Age.**

As noted, Defendant is 44 years old, and by the time he completes the significant prison sentence that he will undoubtedly receive, he will be well into his 60's. Given the reduction in recidivism rates at that age, Defendant is unlikely to commit additional crimes of a similar nature.

**3. Defendant's Substance Abuse Disorder**

At the time of these events, Defendant was abusing Adderall and prescription opiates as reflected in ¶ 71 of the PIR. Defendant has acknowledged his drug problems and the contribution that they made to the unlawful conduct in which he engaged. While voluntary drug use typically is not a mitigating factor, the combination of Defendant's mental health issues and his massive drug problem appears to have contributed to his unlawful behavior. This is particularly true since the Defendant did not possess child pornography involving other minors, was not involved in distribution of such material, and seems to have been solely fixated on Victim 1. Cessation of drug use, as well as treatment for substance abuse disorder, would assist in ensuring that the Defendant does not engage in similar unlawful conduct in the future.

**4. Sentencing Disparities.**

Sentencing Commission data indicates that for 2025 there were 1,432 child pornography cases, 147 of which were in the Sixth Circuit. The mean sentencing length nationally is 119 months, with the median being 97 months. In the Sixth Circuit, the mean is 129 months and the median is 120 months. However, these statistics *do not include* CSAM *production* cases.

The most recent report from the Sentencing Commission appears to be from 2021, and indicates in *production cases* the average sentence length was 275 months, with a variance rate of 57.2%. It is noted that 80% of those cases involved sexual contact between the Defendant and the victim. (See tables attached hereto as Exhibit 2). The requested variance to 275 months is premised upon the average sentence from that report. Since the large majority of the cases referenced in the report involved sexual contact (as occurred here), counsel submits that a sentence of 360 months would create an unnecessary disparity in sentencing.

Additionally, it should be noted that the guideline ranges for CSAM production cases are harsher than virtually every other crime known to the federal code. For example, if a Defendant is convicted of Murder under 18 U.S.C. § 1111, the base offense level is 43. There are no specific offense characteristics under the guideline associated with murder. (U.S.S.G.§ 2A1.1). Thus, if a murder Defendant pleads guilty, with 3 levels off for acceptance, he would be an offense level 40. In criminal history category II (Defendant's category) the guideline range would be 324-405 months. While it is certainly appropriate that CSAM production cases should be punished harshly, and Congress has indicated its intent to do so (particularly as it relates to § 4B1.5), it seems disproportionate that a child pornography offender would receive a sentence that is harsher than a murderer.

For the foregoing reasons, Defendant submits the variance requested herein is warranted.

### D. <u>Seriousness of the Offense, Promoting Respect for Law, Just Punishment and Protection of the Public.</u>

The seriousness of the offense here is obvious. Defendant's unlawful conduct subjected a prepubescent minor to sexual activity that can only be described as depraved. Accordingly, the facts of this case warrant significant punishment. The question, of course, is how much

punishment is minimally sufficient to promote respect for the law, to protect the public and to provide adequate deterrence.

Protection of the public is always a significant factor in the Court's sentencing calculus. Defendant notes that his singular focus on a particular victim – without any apparent interest in other minors – suggests that protection of the public can be accomplished through the significant sentence recommended herein. Similarly, with respect to deterrence, a carceral sentence of 22 years sends an appropriate message to those inclined to commit such offenses that massive prison time is the consequence for such conduct. It should also be noted that Defendant's criminal history does not reflect a career type criminal who has previously not been deterred based on punishment received. Although Defendant does have non-scored alcohol offenses, his sole point-scored conviction is a wanton endangerment charge resulting from an interpersonal altercation. A sentence of 22 years imprisonment, with significant supervised release to follow, adequately reflects the seriousness of the offense, promotes respect for the law, provides a just punishment, and advances the deterrence interests contained in the sentencing statute.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests a prison sentence of 275 months, followed by a term of supervised release of at least 10 years.

Respectfully submitted,

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.
Law Offices of Thomas C. Lyons
201 West Short Street, Suite 820
Lexington, Kentucky 40507
859-231-0055
thomaslyons@hotmail.com
*Counsel for Defendant, Brent Robert Comstock*

**CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing Sentencing Memorandum and Request for Variance has been served on May 21, 2026 by filing same via the CM/ECF System, which will send electronic notice to all counsel of record.

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.

Cc: Brent Robert Comstock